# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 13-914V
**Filed: April 12, 2016**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | * | UNPUBLISHED |
| COURTNEY MILLER *and* BERNARD | * | |
| MILLER *on behalf of* E.M.M., *a minor*, | * | |
| | * | |
| Petitioners, | * | Chief Special Master Dorsey |
| | * | |
| v. | * | |
| | * | Attorneys' Fees & Costs; |
| SECRETARY OF HEALTH | * | Reasonable Basis; Hourly Rate; |
| AND HUMAN SERVICES, | * | Reasonable Hours; Reasonable Costs |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * | | |

<u>Renee J. Gentry</u>, Vaccine Injury Clinic, George Washington University Law School, Washington, DC, for petitioners.
<u>Ann D. Martin</u>, United States Department of Justice, Washington, DC, for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On November 5, 2014, petitioners in the above-captioned matter filed an unopposed motion for a dismissal decision. The undersigned issued a decision dismissing petitioners' case for insufficient proof on November 7, 2014.

On May 26, 2015, petitioners filed an application for attorneys' fees and costs. Petitioners' ("Pet'rs'") Application ("App") at 2. Respondent filed a response in opposition to petitioners' application on September 1, 2015, arguing that the claim for which the petition was brought lacked a reasonable basis, and objecting to specific aspects of petitioners' application for attorneys' fees and costs. Respondent's ("Resp's") Response at 10-11. Petitioners filed a reply on October 30, 2015, which amended the hourly rates sought in the initial May 26 application for attorneys' fees

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

1

and costs,[2] and requested additional fees for the hours spent working on the reply. See Pet'rs' Reply at 16-17. Respondent filed a sur-reply on November 23, 2015, and petitioners filed a sur-reply on December 3, 2015. Respondent's Sur-Reply at 10; Pet'rs' Sur-Reply at 10.

For the reasons set forth below, the undersigned awards petitioners **$24,420.26** in reimbursement for fees and costs.

I. **Procedural History**

On November 20, 2013, Courtney Miller and Bernard Miller ("petitioners") filed a petition on behalf of E.M.M., a minor, pursuant to the National Vaccine Injury Compensation Program.[3] 42 U.S.C. §§ 300aa-10 to 34 (2012). Petitioners alleged that "the vaccines [E.M.M.] received from July 31, 2009 until April 12, 2011," caused her to suffer "chronic constipation, developmental regression and related problems." Petition at Preamble, ¶ 10. Medical records were not filed with the petition.

Petitioners filed the first medical records on January 29, 2014. The initial status conference was held January 30, 2014. During that status conference, "[w]hen the undersigned inquired about which vaccine(s) are alleged to have caused [E.M.M.]'s injuries. . . petitioners' counsel responded that they were still in the process of determining the answer to [that] question." Order, dated Jan. 31, 2014. Petitioners were also still deciding what they intended to allege with respect to onset of symptoms. Id.

Petitioners filed additional medical records on March 4, 12, 15, and April 14, 2014. On March 15, 2014, petitioners filed an amended petition. The amended petition alleged that "[p]etitioner's chronic constipation and gastrointestinal problems were caused-in-fact by the aggregate of her vaccinations." Amended Petition at ¶ 9. The vaccinations at issue were identified as "the accumulation of vaccines [E.M.M.] received from July 31, 2009, until April 12, 2011." Id. at Preamble. "After petitioner's [sic] routine 18 month vaccinations, on April 12, 2011, petitioner, [sic] suffered from chronic constipation." Id. at ¶ 5. The amended petition also states that "[p]etitioner [sic] was admitted to the Providence Sacred Heart Medical Center Emergency Room on October 28, 2011, for severe nocturnal headaches, eye pain, crying spells ending in blank stares, and decreased caloric intake. These symptoms began approximately around August 2011."[4] Id. at ¶ 6.

---

[2] The calculations used in petitioners' reply are purportedly based on the rates awarded in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

[3] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to 34 (2012) ("Vaccine Act" or "the Act"). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

[4] In her Response, respondent notes that while the amended petition appears to allege an onset in August 2011, it is not clear that the symptoms identified are related to chronic constipation and gastrointestinal problems. Resp's Response at 7 n.4. In their Sur-Reply, petitioners agree that the medical records reflect the onset date for severe constipation was October 3, 2011, not August, 2011. Pet'rs' Sur-Reply at 4.

Respondent filed her Rule 4(c) report on June 16, 2014, stating that this case was not appropriate for compensation. Respondent stated that the medical records "do not indicate any causal relationship between [E.M.M.'s] vaccines and her constipation or GI problems." Resp's Report at 11. Further, respondent stated that petitioners "have not provided an expert witness to advance a potential causal relationship between [E.M.M.]'s vaccines and her 'chronic constipation and gastrointestinal problems,'" and that vaccine causation was "squarely rejected" in E.M.M.'s medical records. Id. (quoting Amended Petition at ¶ 9). Thus, respondent stated that "[o]n the existing record, petitioners have failed to provide preponderant evidence in support of their petition for compensation. Moreover, as the record in this matter now stands, the case lacks a reasonable basis for further proceedings and the case should be dismissed." Id. at 12.

Following a status conference on July 24, 2014, petitioners were granted sixty days to locate an expert witness willing to file an opinion in support of vaccine-injury causation. Order, dated July 24, 2014. On November 5, 2014, petitioners filed an unopposed motion for a dismissal decision, stating that "[a]n investigation of the facts and science supporting has demonstrated to the Petitioners that they will be unable to prove that E.M.M. is entitled to compensation in the Vaccine Program." Pet'rs' Motion for Dismissal at ¶ 1. The undersigned issued a decision dismissing petitioners' case for insufficient proof on November 7, 2014.

On May 26, 2015, petitioners filed an application for attorneys' fees and costs, requesting $20,895.00 in attorneys' fees and $697.76 in attorneys' costs, for a total fees and costs award of $21,592.76. Pet'rs' App at 2. Petitioners' application states that petitioners did not incur expenses in this case. Id. Respondent filed a response to petitioners' application on September 1, 2015, stating that petitioners are not entitled to an award of attorneys' fees and costs because the claim for which the petition was brought lacked a reasonable basis. Resp's Response at 1. Respondent also objected to specific aspects of petitioners' application for attorneys' fees and costs, including the hourly rates sought and compensation for the cost of "porphyrin testing." Id. at 10-11. Petitioners filed a reply on October 30, 2015, in support of their fee application. Their reply amended the hourly rates sought in their original May 26 application, and requested additional fees for the hours spent working on the reply, for a new request of $32,981.00 in attorneys' fees and $697.76 in costs, for a total fees and costs request of $33,678.76. See Pet'rs' Reply at 16-17. Respondent filed a sur-reply on November 23, 2015, stating that she defers to the Chief Special Master to exercise her discretion in determining appropriate hourly attorney rates. Resp's Sur-Reply at 10. Respondent maintained her objection to the hourly rates sought for law students and also objected to the number of hours billed for law student time working on petitioners' reply. Id. at 11-12. Petitioners filed a sur-reply on December 3, 2015, which adjusted the amount of additional fees requested for the time spent working on the reply to $6,612.00, thereby reducing their requested fees by $2,340.00. See Pet'rs' Sur-Reply at 10. Accordingly, petitioners' final total requested attorneys' fees and costs totals $31,338.76.

This matter is now ripe for adjudication.

**II. Discussion**

**A. Attorneys' Fees and Costs: Good Faith and Reasonable Basis**

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. § 300aa-15(3)(1). When

3

compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. at §15(e)(1).

"Good faith" is a subjective standard. Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Jan. 9, 2008). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. Turner v. Sec'y of Health & Human Servs., No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Moreover, petitioners are "entitled to a presumption of good faith." Grice v. Sec'y of Health & Human Servs., 36 Fed. Cl. 114, 121 (Fed. Cl. 1996). Respondent has not challenged whether petitioners' claim was filed in good faith. Therefore, the issue is whether petitioners had reasonable basis to pursue their claim.

### B. Reasonable Basis

The Vaccine Act does not define "reasonable basis," and neither the Federal Circuit nor the Court of Federal Claims has defined "reasonable basis" for purposes of fee awards under the Vaccine Act. Chuisano v. United States, 116 Fed. Cl. 276, 285 (Fed. Cl. 2014). The Court of Federal Claims has held that the statutory language of 42 U.S.C. § 300aa-15(e)(1)(B) grants the special master "maximum discretion in applying the standard." Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 402 (Fed. Cl. 2012). Historically, the court has been "quite generous" in finding a reasonable basis. Turpin ex rel. Turpin v. Sec'y of Health & Human Servs., No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Apr. 26, 2005).

Many special masters and Court of Federal Claims judges have determined that the reasonable basis requirement is an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 303 (Fed. Cl. 2011); Chuisano, 116 Fed. Cl. at 286. In determining reasonable basis, the court looks "not at the likelihood of success, but more to the feasibility of the claim." Di Roma v. Sec'y of Health & Human Servs., No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Factors to be considered include factual basis, medical support, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6-9. An attorney's pre-filing investigation into the feasibility of the claim is also a relevant factor in analyzing whether a petition had a reasonable basis. Cortez v. Sec'y of Health & Human Servs., No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014). A reasonable basis can exist even if medical records are not filed simultaneously with the petition. McKellar, 101 Fed. Cl. at 303.

While the burden is on petitioner to affirmatively demonstrate a reasonable basis, "petitioner need not establish entitlement to compensation, or even that a claim is likely to succeed." McKellar v. Sec'y of Health & Human Servs., No. 09-841V, 2012 WL 362030, at *6-7 (Fed. Cl. Spec. Mstr. Jan 13, 2012), reversed on other grounds, 2012 WL 1884703 (Fed. Cl. 2012). Indeed, while petitioner must furnish "some evidence" supporting the claims in the petition, the evidentiary showing is less than a preponderance of the evidence. Chuisano v. Sec'y of Health & Human Servs., No. 07-452V, 2013 WL 6234660, at *1, 13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013). A claim that has a reasonable basis at filing may lose reasonable basis while the case is pending. See Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375 (Fed. Cir. 1994).

### C. Reasonable Basis for Petitioners' Claim

Respondent contends that "petitioners' counsel did not conduct an adequate investigation into the feasibility of the petition until after it was filed, and there is no evidence to support a finding that petitioners had a reasonable basis at any point during the pendency of the petition." Resp's Response at 10. Petitioners state that they expended considerable effort in pre-filing investigation of facts and analysis of medical records, and that a reasonable basis existed for filing the petition. Pet'rs' Reply at 5-6.

#### i. Medical Records and Temporal Relationship

Respondent argues that the records of E.M.M.'s constipation and gastrointestinal difficulties provide no support for a finding of reasonable basis. Resp's Response at 7-8. Respondent notes that the records establish that E.M.M. had symptoms of constipation on November 5, 2010, and therefore contradict petitioners' claim that the onset of E.M.M's symptoms occurred after E.M.M.'s April 12, 2011, vaccinations. See id. (citing Pet'rs' Ex. 5 at 16). The next notation in the medical records related to E.M.M.'s constipation was on March 22, 2011, several weeks before her April 12, 2011, vaccinations, when the doctor noted "Hx Constipation" and a current diagnosis of constipation. Id. at 8 (citing Pet'rs' Ex. 5 at 16). Subsequently, on October 3, 2011, six months after her April 12, 2011, vaccinations, the medical records indicate that E.M.M.'s mother reported she was "having small round stools [with] small amount of blood on outside." Id. (citing Pet'rs' Ex. 5 at 12). Over a year later, on January 16, 2013, a gastroenterologist commented that he believed E.M.M.'s symptoms were "most likely related to stool withholding and constipation-related diet," and he "[did] not feel that immunizations have led to her symptoms of constipation." Id. (citing Pet'rs' Ex. 3-2 at 178).

Respondent asserts that petitioners' argument on temporal proximity is unsound, and that in light of the fact that E.M.M.'s constipation was documented on November 5, 2010, petitioners did not have a reasonable basis for their claim that she suffered from chronic constipation *after* her 18-month vaccinations. Resp's Sur-Reply at 2-3. Respondent notes that because the petition was filed on November 20, 2013, petitioners could not have advanced a claim of vaccine causation based on symptoms present on or before November 5, 2010, due to the expiration of the thirty-six months statute of limitations. Resp's Response at 8. Petitioners did not allege a significant aggravation theory at any time during the pendency of their claim. Resp's Sur-Reply at 2-3.

Petitioners acknowledge that the record from November 5, 2010, does say "stools still hard . . . never soft." Pet'rs' Sur-Reply at 3 (citing Pet'rs' Ex. 5 at 16). However, petitioners contend that the November 2010, record reflects "an isolated incident of constipation which was *treated and resolved* by a prescription of a stool softener." Id. (emphasis in original). The severe constipation following the April 2011 vaccinations, which petitioners allege was caused in fact by the aggregate of E.M.M.'s vaccinations, was "separate" and "unrelated" to her hard stools on November 5, 2010. Id. at 3-4. Petitioners contend that the symptoms reported after E.M.M.'s April 2011 vaccinations embody the onset of a "far more severe condition"—constipation with blood in stool—than the symptoms reported on November 5, 2010. Pet'rs' Reply at 5.

### ii. Counsel's Theory and Investigation

Petitioners emphasize that their theory, as set forth in the amended petition, was that E.M.M.'s constipation and gastrointestinal problems were caused by the *aggregate* of her vaccinations, and their claim is not a significant aggravation claim. See Pet'rs' Sur-Reply at 3. An aggregate effect "depends on a series of incremental changes and it is the last change in the series which tips the balance to reveal the effect. Petitioners' primary contention . . . is that E.M.M.'s routine 18 month vaccinations on April 12, 2011 led to E.M.M.'s chronic constipation of a severe nature." Id. Petitioners note that the constipation reported in November 2010 occurred approximately seven months after E.M.M.'s 8-month vaccinations in April 2010, and that her October 2011 constipation occurred approximately six months after her April 2011 vaccinations. See id. at 6-7. Thus, they contend in their sur-reply:

> [I]n making the claim for an aggregate effect of all of E.M.M.'s vaccinations received since birth, they . . . have the adverse events of *at least* two series of vaccines upon which to base their claim—one series being the 5 vaccinations E.M.M. received on April 23, 2010 and the other series being the 2 vaccinations E.M.M. received on April 12, 2011, this latter series, which fell squarely within the statute of limitations, being responsible for the onset of E.M.M.'s chronic constipation of a severe nature.[5]

Id. at 7 (citing Pet'rs' Reply at 6; Pet'rs' Ex. 5 at 12)(emphasis in original). Petitioners state that they expended considerable effort in a pre-filing investigation of facts and analysis of medical records. Pet'rs' Reply at 6. Law students in the George Washington Law School Vaccine Injury Clinic initially consulted with petitioners on September 2, 2013, and reviewed materials, a narrative, and medical records provided by petitioners prior to filing the petition, which indicated that E.M.M. received vaccinations from birth through her 18-month doses on April 12, 2011, and had several medical treatments related to relieving constipation and therapy sessions for developmental delay. Id. On October 11, 2013, the students reviewed articles about aluminum and constipation with Mr. Clifford J. Shoemaker, a co-director of the Vaccine Injury Clinic, and petitioners' counsel intended to pursue a theory of causation that the "aluminum adjuvant in one or more of E.M.M.'s vaccines led to the onset and aggravation of her constipation and the resulting heavy metal toxicity adversely affected her development." Id. at 7. Petitioners assert that the medical literature, in combination with a review of E.M.M.'s vaccination history showing the series of vaccination events containing an aluminum adjuvant component over the course of E.M.M.'s life, support a reasonable basis for filing the initial petition on November 20, 2013. Id. at 7.

---

[5] In their October 30, 2015, reply, petitioners stated that the report of symptoms in November 5, 2010, occurred roughly three months after E.M.M.'s August 3, 2010, routine vaccination with PCV13, which contains an aluminum adjuvant. Pet'rs' Reply at 5, 7. Respondent then correctly pointed out that E.M.M. did *not* receive PCV13 on August 3, 2010, and argued that therefore "[t]he challenge-rechallenge concept that petitioners posit to overcome the fact that E.M.M.'s constipation was manifest by November 5, 2010, is inconsistent with their counsel's aluminum adjuvant theory." Resp's Sur-Reply at 4-5. In their sur-reply, petitioners admitted respondent was correct that E.M.M. did not receive PCV13 on August 3, 2010, and revised their statement, relating the November 5, 2010, symptoms to E.M.M.'s April 23, 2010, vaccinations, five of which did contain aluminum adjuvant. See Pet'rs' Sur-Reply at 6-7.

### iii. Petitioners' Claim Was Supported by a Reasonable Basis When Filed

The undersigned finds that petitioners' claim was supported by a reasonable basis when the initial petition was filed on November 20, 2013. Petitioners' counsel conducted an adequate pre-filing investigation of the claim. Counsel's efforts included: meeting with petitioners; reviewing materials, a narrative, and medical records of E.M.M.'s vaccination history provided by petitioners;[6] reviewing medical literature about aluminum and constipation; and discussing their theory of causation. Pet'rs' Reply at 6-7. Counsel filed the initial November 20, 2013, petition based on the medical literature and E.M.M.'s vaccination history showing the series of vaccination events containing an aluminum adjuvant component over the course of E.M.M.'s life. Id. at 7.

### iv. Petitioners' Claim Lost Reasonable Basis While the Case Was Pending

Although the undersigned finds that a reasonable basis existed at the outset, petitioners' claim lost reasonable basis once petitioners' counsel had received and reviewed E.M.M.'s complete medical records. The medical records establish that E.M.M. had symptoms of constipation on November 5, 2010, prior to her April 12, 2011, vaccinations. See Pet'rs' Ex. 5 at 16. Petitioners' assertion that the November 5, 2010, symptoms are "separate" and "unrelated" to the severe constipation that presented in October, 2011, following the April 2011, vaccinations, is unsupported. In fact, on March 22, 2011, several weeks *before* E.M.M.'s April 2011, vaccinations, E.M.M.'s physician noted a current diagnosis of constipation. See id. This indicates that her constipation had not resolved prior to her April 2011 vaccinations. Similarly, it is not reasonable to infer from the medical records that E.M.M.'s constipation with a small amount of blood in October 2011 was a "far more severe condition" than the constipation reported in November 2010.

Petitioners stress that their theory is that E.M.M.'s constipation and gastrointestinal problems were caused by the *aggregate* of the vaccinations she received throughout her life. Pet'rs' Sur-Reply at 3. Petitioners explain that "[a]n aggregate effect depends on a series of incremental changes and it is the last change in the series which tips the balance to reveal the effect." Id. However, petitioners do not provide a coherent explanation as to why the October 2011 symptoms, as opposed to the November 2010 symptoms, constitute the onset of E.M.M.'s constipation resulting from the aggregate of her vaccinations. Petitioners' attempt to account for the November 2010 constipation as unrelated to the October 2011 constipation is undermined by petitioners' assertion that they "have the adverse events of *at least* two series of vaccines upon which to base their claim . . . " Id. at 7 (emphasis in original). Petitioners relate E.M.M.'s November 2010 constipation to her April 2010 vaccinations, just as they relate her October 2011 constipation to her April 2011 vaccinations. See id. at 6. As respondent noted, because the petition was filed on November 20, 2013, petitioners could not have advanced a claim of vaccine causation based on

---

[6] Other than records of E.M.M.'s vaccination history, it is not clear what other medical records, if any, counsel reviewed prior to filing the petition. However, it appears that counsel did not have access to a complete set of records, as the petition, filed on November 20, 2013, requested authority to issue subpoenas to E.M.M.'s treating providers. See Petition at ¶ 14. This authority was granted December 3, 2013, and the first medical records were filed January 29, 2014. A second motion for authority to issue a subpoena to additional providers was granted on February 10, 2014. Additional medical records were filed on March 4, 12, 15, and April 14, 2014.

symptoms present on or before November 20, 2010, due to the expiration of the thirty-six month statute of limitations.

As described above, E.M.M.'s medical records do not support the temporal association required by petitioners' theory. Other than E.M.M.'s vaccination history in general, petitioners do not identify anything specific in the medical records that supports a causal link. In fact, as respondent noted, E.M.M.'s gastroenterologist specifically noted that he believed E.M.M.'s symptoms were "most likely related to stool withholding and constipation-related diet." Pet'rs' Ex. 3-2 at 178). Once petitioners' counsel became aware of the lack of support for their theory in the medical records, the claim was no longer feasible and lost reasonable basis. Though it is unclear exactly when counsel received copies of given medical records, counsel certainly had all of E.M.M.'s medical records by April 14, 2014, when the last medical record was filed. Thus, the undersigned finds that no reasonable basis to pursue the claim past April 14, 2014, exists. See Perreira, 33 F.3d 1375.

**Accordingly, fees and costs expended to review the medical records and evaluate the claim will be awarded through April 14, 2014. In addition, fees incurred for the litigation of the present fee dispute itself will be awarded.**

### D. Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### i. Hourly Rates

In their initial May 26, 2015, fee application, petitioners requested the following rates for the attorneys who worked on this matter: $400 per hour for attorney Peter Meyers for work performed from 2013 to 2014; $450 per hour for attorney Clifford J. Shoemaker for work performed from

2013 to 2015; and $375 per hour for Renee Gentry, for work performed in 2014. See Pet'rs' App. at 2, Tabs 2-3. Respondent objected to the hourly rates sought. Resp's Response at 11-13. In their reply, petitioners amended the requested rates to conform with the forum rates recently set in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), based on the years of experience of Mr. Meyers, Mr. Shoemaker, and Ms. Gentry. Pet'rs' Reply at 9-10. Petitioners' amended requested rates are: $385 per hour for attorney Peter Meyers for work performed in 2013, and $400 per hour for work performed in 2014; $385 per hour for attorney Clifford Shoemaker for work performed in 2013, $400 per hour for work performed in 2014, and $415 per hour for work performed in 2015; $375 per hour for Renee Gentry for work performed in 2014, and $400 per hour for work performed in 2015. Id. at 16-17. In her sur-reply, respondent states that while she "disagrees with the analysis and findings in [McCulloch], respondent has determined that her resources are not wisely used by continuing to litigate the issues addressed in [McCulloch]." Accordingly, respondent "defers to the Chief Special Master to exercise her discretion in determining appropriate rates for the professionals who worked on this case." Resp's Sur-Reply at 10.

The undersigned agrees with the analysis and findings in McCulloch, and finds the McCulloch rates reasonable for the attorney and law student work performed in this case. Pursuant to McCulloch, the following ranges of rates are appropriate for work performed in 2014 and 2015:

> The range of $350 to $425 an hour for attorneys with more than 20 years of experience is a reasonable forum rate. The higher end of the range should be awarded to those with significant Vaccine Program experience who perform high quality legal work in vaccine cases. . . . [L]awyers with 11 to 19 years of experience may reasonably charge $300 to $375 an hour, with higher rates to be paid to those with significant vaccine experience who perform quality work in these cases. . . . [T]hose with less than 4 years' experience may receive between $150 and $225. Particularly, in the latter category, prior clerkships or legal intern work during law school in the Vaccine Program may be considered.

McCulloch, 2015 WL 5634323, at *19.

### a. Mr. Meyers and Mr. Shoemaker

Petitioners request $400 per hour for both Mr. Meyers and Mr. Shoemaker for work performed in 2014.[7] Pet'rs' Reply at 16. This rate falls in the mid-range of rates approved in McCulloch for attorneys with more than 20 years of experience, and the undersigned finds it reasonable based on Mr. Meyers' and Mr. Shoemaker's experience and skill in Vaccine Program cases. Peter Meyers has "more than 30 years of litigation experience in trial, appellate, and administrative proceedings," has extensive vaccine litigation experience, and produces high quality work in vaccine litigation. Id. at 13-14. He founded the Vaccine Injury Clinic at George Washington University Law School in 1994 and served as its director until recently. Pet'rs' App. at 3; Pet'rs' App., Tab 1 at 1. Similarly, Clifford Shoemaker has more than 20 years of experience

---

[7] The requested rate for 2013 is based on a downward adjustment of 3.7%—the adjustment based on attorney fee inflation applied in McCulloch. See McCulloch, 2015 WL 5634323, at *16.

and has been practicing vaccine litigation since 1978. Pet'rs' Reply at 11. He has been involved with the Vaccine Injury Clinic at George Washington University Law School since 2007 and recently became co-director of the clinic. Id. The hourly rates requested for Mr. Meyers and Mr. Shoemaker for 2013 and 2015—$385 for 2013, and $415 for 2015—are consistent with the 3.7% yearly adjustment for attorneys' fees growth applied in McCulloch. See McCulloch, 2015 WL 5634323, at *16. **The undersigned will award Mr. Meyers $385 per hour for work performed in 2013 and $400 per hour for work performed in 2014. The undersigned will award Mr. Shoemaker $385 per hour for work performed in 2013, $400 per hour for work performed in 2014, and $415 per hour for work performed in 2015.**

b. Ms. Gentry

Petitioners request $375 per hour for Ms. Gentry for work performed in 2014 and $400 per hour for work performed in 2015. Pet'rs' Reply at 17. In 2014, Ms. Gentry had been practicing law for 19 years and has been practicing vaccine litigation since 2001. Id. at 11-12. She is also a co-director of the Vaccine Injury Clinic. Id. at 2. Ms. Gentry's requested rate for 2014 is at the high end of the range of rates approved by McCulloch for lawyers with 11 to 19 years of experience. The undersigned finds the requested rate reasonable based on Ms. Gentry's years of experience and skill in Vaccine Program cases. In 2015, Ms. Gentry had been practicing law for 20 years and had therefore crossed into the higher experience bracket for attorneys with 20 or more years of experience articulated in McCulloch. Accordingly, a 2015 rate of $400 per hour, which represents an increase of slightly more than the 3.7% adjustment for growth in attorneys' fees, is warranted. **The undersigned will award Ms. Gentry $375 per hour for work performed in 2014, and $400 per hour for work performed in 2015.**

c. Law Students

Petitioners request an hourly rate of $150 for the law students who worked on this matter, arguing that such "student attorneys" are considered in the category of "attorneys with less than [four] years of legal experience" under McCulloch. See Pet'rs' Reply at 14; Pet'rs' Sur-Reply at 10. Petitioners argue that this rate is supported because the "student attorneys" at the Vaccine Injury Clinic are certified per Rule 83.3 of the Rules of the United States Court of Federal Claims, and McCulloch states that "legal intern work during law school in the Vaccine Program may be considered" when determining the appropriate rate for an attorney with less than four years of experience in the Program. Pet'rs' Sur-Reply at 9. Respondent argues that the law clerk rate of $145 per hour awarded in McCulloch is more appropriate for the students, as "[e]ligibility for attorney rates should require a license to practice law." Resp's Sur-Reply at 11.

The undersigned agrees with respondent that the rate of $145 per hour, awarded to law clerks in McCulloch, is appropriate for the law student work in this case. Although they are certified under the Rules of the United States Court of Federal Claims, the students are not licensed to practice law as attorneys and therefore do not fall into the McCulloch category of *attorneys* with less than four years of experience." Indeed, like the students in the present case, the "law clerks" awarded $145 per hour in McCulloch were law students who worked at the firm under supervision of the firm attorneys. McCulloch, 2015 WL 5634323, at *21. **The undersigned will compensate law student time at a rate of $145 per hour.**

10

### ii. Reasonable Hours

On review of the billing records, the undersigned finds that Mr. Meyers expended a total of 16.1 hours of work on this case through April 14, 2014—9.6 hours in 2013, and 6.5 hours in 2014. Pet'rs' App., Tab 2. Mr. Meyers did not work on the fee portion of the case. Accordingly, at a rate of $385 per hour for work performed in 2013 and $400 per hour for work performed in 2014, **the undersigned awards $6,296.00 for Mr. Meyers' work.**

Mr. Shoemaker expended 7.6 hours of work on the substantive portion of this case through April 14, 2014—3.8 hours in 2013, and 3.8 hours in 2014. Pet'rs' App. Tab 3 at 1-2; Pet'rs' Reply, Tab 1 at 1-2. In addition, the billing record submitted with petitioners' reply indicates that Mr. Shoemaker performed .10 hours of work in 2014 and 3.3 hours of work in 2015 relating to preparation of the initial May 26, 2015 fee application, and an additional 2.9 hours of work between June 8, 2015, and October 24, 2015, related to preparation of petitioners' reply.[8] See Pet'rs' Reply, Tab 1 at 2-3. Accordingly, at a rate of $385 for work performed in 2013, $400 for work performed in 2014, and $415 for work performed in 2015, **the undersigned awards $5,596.00 for Mr. Shoemaker's work**.

Ms. Gentry expended .2 hours of work on the substantive portion of this case through April 14, 2014. Pet'rs' Reply, Tab 1 at 2-3. In addition, the billing record submitted with petitioners' reply indicates that Ms. Gentry performed 6.7 hours of work between June 10, 2015, and October 19, 2015, directly related to preparation of petitioners' fee reply. See Pet'rs' Reply, Tab 1 at 4. Accordingly, at a rate of $375 per hour for work performed in 2014 and $400 per hour for work performed in 2015, **the undersigned awards $2,755.00 for Ms. Gentry's work**.

Upon review of the billing records submitted with petitioners' fee application, the undersigned finds that the law students worked 31.5 hours on the substantive portion of this case through April 14, 2014.[9] See Pet'rs' App., Tab 4. In their reply, petitioners requested compensation for an additional 59.68 hours of student time spent preparing the reply. See Pet'rs' Reply, Tab 2 at 1-2. In her sur-reply, respondent objected that 59.68 hours of student time spent on petitioners' reply is excessive. Resp's Sur-Reply at 11.[10] Respondent proposed that "32 hours, constituting four full work days, is a generous level of billable student attorney hours for the task." Id. at 12. In their sur-reply, petitioners responded that the 59.68 hours are reasonable because the students were new to the case, and "had to review everything and familiarize themselves with the case," and had to "[go] back to reconstruct a case based on the respondent's arguments." Pet'rs'

---

[8] To determine the number of hours spent working on fee issues, the undersigned reviewed all billing record entries dated after November 5, 2014, the date on which petitioners filed their motion for a dismissal decision.

[9] The body of petitioners' initial fee application requested fees for 38 hours of student time, but the billing record only reflects 33 hours. Compare Pet'rs' App. at 2 with Pet'rs' App., Tab 4.

[10] Respondent states that the 59.68 hours "is excessive, particularly considering that Mr. Shoemaker and Ms. Gentry billed an additional 6.75 hours on the filing." Resp's Sur-Reply at 11. It is not clear how respondent determined that Mr. Shoemaker and Ms. Gentry billed 6.75 hours on the filing. A review of the billing records indicates Mr. Shoemaker and Ms. Gentry billed 8.85 hours related to the reply. See Pet'rs' Reply, Tab 1 at 2-4.

Sur-Reply at 9. Petitioners revised their request to account for hours billed as joint effort, reducing their request to 44.08 hours for student time spent working on the reply. Id. at 10, Tab 5 at 1-2.

The undersigned agrees with respondent that the time billed for student work preparing the reply in this case is excessive, even at 44.08 hours. The fact that the students were new to the case and therefore needed to spend significant time reviewing and familiarizing themselves with the case does not support petitioners' assertion that the hours billed are reasonable. The undersigned and other special masters have previously noted the inefficiency that results when multiple attorneys work on the same case. See Sabella, 86 Fed. Cl. at 214-15 (affirming the special master's reduction of fees for overstaffing where three attorneys from two different firms worked on a case together); Austin v. Sec'y of Health & Human Servs., No. 10-362V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan 31, 2013) (Special Master Vowell deducted fees for excessive intra-office communication in a case where seven attorneys at Conway Homer & Chin-Caplan ("CHCC") billed for attending conferences and drafting memoranda about the case); Soto v. Sec'y of Health & Human Servs., No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011) (Special Master Millman reduced CHCC's fees for intra-office communications and meetings); Carcamo v. Sec'y of Health & Human Servs., No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011) (Special Master Millman reduced fees when two attorneys at the Law Offices of Dale K. Galipo billed for the same meetings with a client). Although the above cases deal with attorneys, the same inefficiencies result when multiple law students work on a case. The undersigned understands that law student turn-over is inevitable due to the school year calendar and that new students will require some time to familiarize themselves with the case. However, the additional time spent working on the case as a result of the review and familiarization is not reasonably billable to the Program. The undersigned will compensate 32 hours of student time spent working on petitioners' reply.

Accordingly, at a rate of $145 per hour, **the undersigned awards $9,207.50 for student work performed in this case**.

### E. Costs

Petitioners request $132.00 in reimbursement for the cost of porphyrin testing. See Pet'rs' App. at 2, Tab 5. Petitioners' counsel directed petitioners to perform the testing on December 2, 2013. Pet'rs' Reply at 8. Petitioners state that "[p]orphyrin testing is used to evaluate heavy metal toxicity in the body, and hence may provide results indicative of the accumulation of aluminum present in vaccine adjuvants." Id. at 15. As respondent notes, however, the porphyrin testing was not requested by a treating physician or potential medical expert, but rather was directed solely by counsel. See Resp's Sur-Reply at 10. Indeed, although counsel believed the results supportive of their theory, petitioners were unable to find an expert to support their case. Id. at 10-11. The undersigned does not find the cost of the porphyrin testing at the direction of counsel to be a reasonable expense in this case. **Accordingly, the undersigned reduces petitioners' requested costs of $697.76 by $132.00 and awards $565.76 in costs.**

### III.    Conclusion

The undersigned finds an award of attorneys' fees and costs appropriate. In sum, the undersigned awards petitioner the following amount for attorneys' fees and costs:

Petitioners' Application for Attorneys' Fees & Costs:

| | |
|---|---|
| **Attorneys' Fees Awarded:** | **$23,854.50** |
| Mr. Meyers: $6,296.00 | |
| Mr. Shoemaker: $5,596.00 | |
| Ms. Gentry: $2,755.00 | |
| Law Students: $9,207.50 | |
| **Costs Awarded:** | **$565.76** |
| **Total Fees & Costs Awarded:** | **$24,420.26** |

**Accordingly, the Court awards:**

a. **$24,420.26** representing attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioners and their attorney of record, Renee J. Gentry, in the amount of **$24,420.26.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[11]

**IT IS SO ORDERED.**

**s/ Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.